**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

ADRIEN FRANCIME,

    *Plaintiff,*

v.

HAWK-EYE MANAGEMENT, LLC.;
HAWK-EYE MANAGEMENT, INC.; and
LAKERIDGE GREENS HOMEOWNERS'
ASSOCIATION, INC.,

    *Defendants.*

_____/

CASE NO.:

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Adrien Francime files this Complaint and Demand for Jury Trial against Defendants Hawk-Eye Management, LLC, Hawk-Eye Management Inc., and Lakeridge Greens Homeowners' Association, Inc., as follows:

### **INTRODUCTION**

1.  Plaintiff is 76 years old. For 26 years, he worked as the maintenance man for the Lakeridge Greens gated-housing community (the "**Community**") in Boynton Beach. Residents loved him. And he loved working there.

2.  In March 2022, Defendants unceremoniously terminated his employment solely because of his age.

3.  Plaintiff seeks damages for discrimination in violation of the Age Discrimination in Employment Act of 1967 ("**ADEA**") and the Florida Civil Rights Act of 1992 ("**FCRA**").

## PARTIES

4. Plaintiff is a resident of Palm Beach County, Florida. At all times material, he was Defendants' employee. 29 U.S.C. § 630.

5. Defendant Hawk-Eye Management, LLC, is a Florida company with its principal address in Palm Beach County, Florida, and was Plaintiff's employer at all times material. 29 U.S.C. § 630; Fla. Stat. § 760.02.

6. Defendant Hawk-Eye Management, Inc., is a Florida profit corporation with its principal address in Palm Beach County, Florida, and was Plaintiff's employer at all times material. 29 U.S.C. § 630; Fla. Stat. § 760.02.

7. Defendant Lakeridge Greens Homeowners' Association, Inc. ("**Lakeridge HOA**"), is a Florida not for profit corporation with its principal address in Palm Beach County, Florida, and was Plaintiff's employer at all times material. 29 U.S.C. § 630; Fla. Stat. § 760.02. Lakeridge HOA is the homeowner's association over the Community.

8. Hawk-Eye Management, LLC, and Hawk-Eye Management, Inc., are collectively "**Hawk-Eye**." Hawk-Eye and Lakeridge HOA are collectively "**Defendants**."

## JURISDICTION, VENUE, AND CONDITIONS PRECEDENT

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 for claims arising under 29 U.S.C. § 623.

10. This Court has supplemental jurisdiction over Plaintiff's state law claims because they are so closely related to his ADEA claims that they form part of the same case or controversy. 28 U.S.C. § 1367.

11. This Court has personal jurisdiction over Defendants because they continuously conduct business within this District.

12. Venue is proper because Defendants are subject to personal jurisdiction in this District and because the acts complained of and giving rise to the claims occurred in this District.

13. All conditions precedent have been satisfied in advance of bringing the claims at issue.

## RELATIONSHIP BETWEEN DEFENDANTS

14. Hawk-Eye and Lakeridge HOA each actively participated in the management and supervision of Plaintiff during his employment. They shared and/or co-determined matters governing the essential terms and conditions of Plaintiff's employment. In other words, Defendants each controlled Plaintiff's employment so as to constitute joint employers. For example:

   a. Lakeridge HOA determined Plaintiff's schedule and controlled the timing and amounts of pay increases afforded to Plaintiff by Hawk-Eye;

   b. Plaintiff's direct supervisors were Hawk-Eye's on-site supervisor and a Lakeridge HOA's board member; and

   c. Both Hawk-Eye and Lakeridge HOA had authority to terminate Plaintiff, as evidenced by the fact that it was two Lakeridge HOA agents who fired him in-person and presented him with a separation agreement on Hawk-Eye's behalf and executed by Hawk-Eye's CEO.

15. Hawk-Eye and Lakeridge HOA are also intertwined in other fundamental ways. As examples:

   a. Per filings with the Florida Division of Corporations, Lakeridge HOA's principal and mailing address is Hawk-Eye's Boca Raton headquarters;

    b. Hawk-Eye's Client Service Manager, Ellen Straley (and Plaintiff's former Hawk-Eye supervisor), is listed on Lakeridge HOA's website as a Community Association Manager, with a Lakeridge email address and a link to Lakeridge HOA's primary phone.

## GENERAL ALLEGATIONS

16. The Community is a gated community for residents aged 55 and up. It is located inside a master-planned neighborhood called The Estates at Westchester Country Club in Boynton Beach, Florida. It consists of approximately 350 single-family homes and contains a number of amenities that require regular maintenance, such as an outdoor pool, spa, patio, gym, tennis courts, and clubhouse.

17. In 1996, Plaintiff was hired by a management company called Lang Management and assigned to work at the Community. His duties included general maintenance of the Community clubhouse, guard house, tennis courts, and pool area.

18. Over the years, Plaintiff's duties remained generally the same.

19. On three occasions during Plaintiff's time at the Community, Lakeridge HOA changed the Community management company. Each time, Plaintiff remained. This is because Plaintiff was so well liked by residents that the selection of a new management company was contingent on that company's willingness to retain Plaintiff.

20. For example, in 2007, approximately 100 residents of the Community petitioned Lakeridge HOA to retain Plaintiff after it terminated its relationship with the management company Plaintiff had worked for.

21. Also in 2007, Ralph Nathan, Lakeridge HOA's secretary, assumed primary day-to-day supervision of Plaintiff.

4

22. In 2016, Hawk-Eye contracted with Lakeridge HOA to take over as the Community's management company. Ms. Straley was Hawk-Eye's onsite representative. Along with Mr. Nathan, Ms. Straley acted as Plaintiff's direct superior from this point forward.

23. Plaintiff's paychecks now bore the Hawk-Eye name.

24. In approximately September 2021, Ms. Straley began to pester Plaintiff about retirement. She made repeated statements such as "When are you going to retire" and "You're 74 years old, why don't you retire?"

25. As time went on, Ms. Straley's questioning became both more frequent and intense.

26. Around this same time, Mr. Nathan began to demean Plaintiff over petty issues unrelated to his performance.

27. All of this confused and concerned Plaintiff. He is in spectacular shape. He works hard. His job performance for the Community belied tropes attendant to aging workers. He drew a great deal of pride in his work and had developed long-standing friendships with many residents.

28. He also knew that it was very unlikely that he would be able to find a job that paid him as well or as consistently as his work for Defendants.

29. Further, as Ms. Straley was his superior and the lone Hawk-Eye representative on the jobsite, and Mr. Nathan a high-ranking member of the Lakeridge HOA board, he didn't know to whom he could complain about his treatment.

30. So, he kept his head down and kept working.

31. On March 4, 2022, Plaintiff was told by Mr. Nathan and Gerald Shulman (Lakeridge HOA's Treasurer) that he was terminated, effective immediately.

32. He had never received progressive corrective action as required by Hawk-Eye policy.

33. Also on March 4, Michael Coley, CEO of Hawk-Eye and Messrs. Nathan and Shulman coerced Plaintiff into signing a separation agreement that purported to waive all of his legal rights in exchange for approximately $3,000.[1]

34. That was all on a Friday. By Monday, a new man, decades younger, was working the job that Plaintiff had held for 26 years.

35. Plaintiff has suffered significantly due to Defendants' conduct. All those years of loyalty and dedication weren't worth anything to Defendants. The emotionally draining nature of his termination has been compounded by the fact that Plaintiff has not been able to secure steady work beyond maintenance odd-jobs since his termination.

## COUNT I
## VIOLATION OF ADEA (DISCRIMINATION)
(against all Defendants)

36. Plaintiff repeats and realleges Paragraphs 1-35 as if fully set forth herein.

37. Defendants' conduct detailed above constitutes age discrimination in violation of the ADEA.

38. Plaintiff is over 40 and a protected employee under the ADEA.

39. The ADEA prohibits Defendants from discriminating against Plaintiff in the terms and conditions his employment on the basis of his age.

40. Plaintiff suffered an adverse employment action when he was forced out of his job of more than 25 years because of his age.

41. But for Plaintiff's age, Defendants would not have engaged in such conduct.

42. Defendants' conduct was willful.

---

[1] Fortunately, Plaintiff rescinded the agreement within four days of its signature.

43. Defendants' leadership, management, human resources, and counsel were aware of Defendants' conduct, as such agents partook in Defendants' discriminatory treatment of Plaintiff.

44. Defendants acted with malice or reckless indifference to Plaintiff's rights.

45. Defendants' management knowingly countenanced or approved of age discrimination, as exhibited by Defendants' termination of Plaintiff, failure to identify any lawful reason for his termination, and attempts to have Plaintiff sign a waiver of his rights under the law.

46. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, and will continue to suffer, damages.

47. Plaintiff is entitled to damages to the fullest extent permitted by the ADEA.

## COUNT II
## VIOLATION OF FCRA (DISCRIMINATION)
(against all Defendants)

48. Plaintiff repeats and realleges Paragraphs 1-35 as if fully set forth herein.

49. Plaintiff, a person above the age of 40, is a protected employee under the FCRA.

50. The FCRA prohibits Defendants from discriminating against Plaintiff in the terms and conditions his employment on the basis of his age.

51. Plaintiff suffered an adverse employment action when he was forced out of his job of more than 25 years because of his age.

52. But for Plaintiff's age, Defendants would not have engaged in such conduct.

53. Defendants were alerted at every level of management as to what was happening to Plaintiff—and directly partook in Defendants' discriminatory treatment of Plaintiff. And yet, Defendants continued to countenance or approve of the discrimination Plaintiff was subjected to.

54. Defendants acted with malice or with reckless indifference to Plaintiff's rights.

55. Defendants' management knowingly countenanced or approved of age discrimination, as exhibited by Defendants' termination of Plaintiff, failure to identify any lawful reason for his termination, and attempts to have Plaintiff sign a waiver of his rights under the law.

56. As a proximate and direct result of Defendants' conduct, Plaintiff has suffered, and will continue to suffer, damages including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities.

57. Plaintiff is entitled to compensatory and punitive damages, to the fullest extent permitted by the FCRA.

## COUNT III
## VIOLATION OF ADEA (HOSTILE WORK ENVIRONMENT)
(against all Defendants)

58. Plaintiff repeats and realleges Paragraphs 1-35 as if fully set forth herein.

59. Plaintiff, a person above the age of 40, is a protected employee under the ADEA.

60. The ADEA prohibits Defendants from discriminating against Plaintiff in the terms and conditions his employment on the basis of his age.

61. Plaintiff's harassment was allowed by Defendants because of his age. But for his status, Plaintiff would have been treated differently by Defendants.

62. A reasonable person similarly situated in Plaintiff's position would have been dissuaded from reporting incidents of age-based misconduct and harassment.

63. Plaintiff did not welcome the comments and harassment of his superiors. The conduct was significant and pervasive to a degree that it altered the terms or conditions of Plaintiff's employment.

64. Among other factors demonstrating that Defendants' work environment had become hostile to Plaintiff:

8

    a. Defendants began pressuring Plaintiff to retire approximately 6 months before his termination;

    b. Defendants began criticizing Plaintiff for non-performance related reasons; and

    c. Defendants terminated Plaintiff without cause or prior corrective action planning.

65. Plaintiff was a man in his mid-70's who had been working at the same place for more than 25 years. And out of the blue, both of his primary direct reports changed the way that they treated him on a daily basis.

66. A reasonable person would have found that the offensive acts and statements altered the terms or conditions of Plaintiff's employment—and Plaintiff believed such conduct did alter the terms or conditions of us employment.

67. Defendants knew, or in the exercise of reasonable care should have known, about the hostile work environment.

68. Defendants failed to take prompt remedial action to eliminate the hostile work environment.

69. Plaintiff suffered damages as result of Defendants' hostile work environment in an amount to be determined at trial.

## COUNT IV
## VIOLATION OF FCRA (HOSTILE WORK ENVIRONMENT)
(against all Defendants)

70. Plaintiff repeats and realleges Paragraphs 1-35 as if fully set forth herein.

71. Plaintiff, a person above the age of 40, is a protected employee under the FCRA.

72. The FCRA prohibits Defendants from discriminating against Plaintiff in the terms and conditions his employment on the basis of his age.

73. Plaintiff's harassment was allowed by Defendants because of his age. But for his status, Plaintiff would have been treated differently by Defendants leading up to his termination.

74. A reasonable person similarly situated in Plaintiff's position would have been dissuaded from reporting incidents of age-based misconduct and harassment.

75. Plaintiff did not welcome the comments and harassment of his superiors. The conduct was significant and pervasive to a degree that it altered the terms or conditions of Plaintiff's employment.

76. Among other factors demonstrating that Defendants' work environment had become hostile to Plaintiff:

   a. Defendants began pressuring Plaintiff to retire approximately 6 months before his termination;

   b. Defendants began criticizing Plaintiff for non-performance related reasons; and

   c. Defendants terminated Plaintiff without cause or prior corrective action planning.

77. Plaintiff was a man in his mid-70's who had been working at the same place for more than 25 years. And out of the blue, both of his primary direct reports changed the way that they treated him on a daily basis.

78. A reasonable person would have found that the offensive acts and statements altered the terms or conditions of Plaintiff's employment—and Plaintiff believed such conduct did alter the terms or conditions of his employment.

79. Defendants knew, or in the exercise of reasonable care should have known, about the hostile work environment.

80. Defendants failed to take prompt remedial action to eliminate the hostile work environment.

81. Plaintiff suffered damages a as result of Defendants' hostile work environment in an amount to be determined at trial.

## REQUEST FOR RELIEF

Plaintiff respectfully requests the Court enter judgment in his favor as follows:

a. Back and front pay resulting from Defendants' violations of the ADEA to the fullest extent permitted by law;

b. Liquidated damages resulting from Defendants' violations of the ADEA to the fullest extent permitted by law;

c. Back and front pay resulting from Defendants' violations of the FCRA to the fullest extent permitted by law;

d. Compensatory and punitive damages resulting from Defendants' violations of the FCRA to the fullest extent permitted by law;

e. Pre-judgment and post-judgment interest;

f. An award of Plaintiff's costs and reasonable attorneys' fees; and

g. Such other relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims.

Dated: April 30, 2024

Respectfully submitted,

By: */s/ Christopher S. Prater*
Christopher S. Prater
Florida Bar No.: 105488
cprater@pollardllc.com

Jonathan E. Pollard
Florida Bar No.: 83613
jpollard@pollardllc.com

Michael A. Boehringer
Florida Bar No.:1018486
mboehringer@pollardllc.com

**Pollard PLLC**
401 E. Las Olas Blvd., #1400
Fort Lauderdale, FL 33301
Telephone: 954-332-2380
Facsimile: 866-594-5731
*Attorneys for Plaintiff Adrien Francime*